**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **DONNA F. KEELING,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | **Case No. 4:10CV1975MLM** |
| | ) | |
| **MICHAEL J. ASTRUE,** | ) | |
| **Commissioner of Social Security,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## MEMORANDUM OPINION

This is an action under Title 42 U.S.C. § 405(g) for judicial review of the final decision of

Michael J. Astrue ("Defendant") denying the applications of Donna F. Keeling ("Plaintiff") for

Disability Insurance Benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401 et seq., and

for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act, 42 U.S.C. §§

405(g) et seq. Plaintiff filed a Brief in Support of the Complaint. Doc.14. Defendant filed a Brief in

Support of the Answer. Doc.17. The parties have consented to the jurisdiction of the undersigned

United States Magistrate Judge pursuant to Title 28 U.S.C. § 636(c)(1). Doc. 11.

### I.
### PROCEDURAL HISTORY

Plaintiff filed applications for benefits on May 18, 2006, alleging a disability onset date of

April 15, 2006. Tr. 64-70. Following an unfavorable determination, Plaintiff requested a hearing

before an Administrative Law Judge ("ALJ"). Tr. 62-67. On September 24, 2008, a hearing was held

before an ALJ. Tr. 15-27. On October 10, 2008, the ALJ found that Plaintiff was not disabled

through the date of the decision. Tr. 9-21. Plaintiff sought review of the ALJ's decision with the

Appeals Council. Tr. 6-8. On August 20, 2010, the Appeals Council denied Plaintiff's request for review. Tr. 1-5. As such, the ALJ's decision stands as the final decision of the Commissioner.

## II.
## LEGAL STANDARDS

Under the Social Security Act, the Commissioner has established a five-step process for determining whether a person is disabled. 20 C.F.R. §§ 416.920, 404.1529. "'If a claimant fails to meet the criteria at any step in the evaluation of disability, the process ends and the claimant is determined to be not disabled.'" Goff v. Barnhart, 421 F.3d 785, 790 (8th Cir. 2005) (quoting Eichelberger v. Barnhart, 390 F.3d 584, 590-91 (8th Cir. 2004)). In this sequential analysis, the claimant first cannot be engaged in "substantial gainful activity" to qualify for disability benefits. 20 C.F.R. §§ 416.920(b), 404.1520(b). Second, the claimant must have a severe impairment. 20 C.F.R. §§ 416.920(c), 404.1520(c). The Social Security Act defines "severe impairment" as "any impairment or combination of impairments which significantly limits [claimant's] physical or mental ability to do basic work activities." Id. "The sequential evaluation process may be terminated at step two only when the claimant's impairment or combination of impairments would have no more than a minimal impact on [his or] her ability to work." Page v. Astrue, 484 F.3d 1040, 1043 (8th Cir. 2007) (quoting Caviness v. Massanari, 250 F.3d 603, 605 (8th Cir. 2001) (citing Nguyen v. Chater, 75 F.3d 429, 430-31 (8th Cir. 1996))).

Third, the ALJ must determine whether the claimant has an impairment which meets or equals one of the impairments listed in the Regulations. 20 C.F.R. §§ 416.920(d), 404.1520(d); pt. 404, subpt. P, app. 1. If the claimant has one of, or the medical equivalent of, these impairments, then the claimant is per se disabled without consideration of the claimant's age, education, or work history. Id.

Fourth, the impairment must prevent the claimant from doing past relevant work. 20 C.F.R. §§ 416.920(f), 404.1520(f). The burden rests with the claimant at this fourth step to establish his or her Residual Functional Capacity ("RFC"). Steed v. Astrue, 524 F.3d 872, 874 n.3 (8th Cir. 2008) ("Through step four of this analysis, the claimant has the burden of showing that she is disabled."); Eichelberger, 390 F.3d at 590-91; Masterson v. Barnhart, 363 F.3d 731, 737 (8th Cir. 2004); Young v. Apfel, 221 F.3d 1065, 1069 n.5 (8th Cir. 2000). The ALJ will review a claimant's RFC and the physical and mental demands of the work the claimant has done in the past. 20 C.F.R. § 404.1520(f).

Fifth, the severe impairment must prevent the claimant from doing any other work. 20 C.F.R. §§ 416.920(g), 404.1520(g). At this fifth step of the sequential analysis, the Commissioner has the burden of production to produce evidence of other jobs in the national economy that can be performed by a person with the claimant's RFC. Steed, 524 F.3d at 874 n.3; Young, 221 F.3d at 1069 n.5. If the claimant meets these standards, the ALJ will find the claimant to be disabled. "The ultimate burden of persuasion to prove disability, however, remains with the claimant." Id. See also Harris v. Barnhart, 356 F.3d 926, 931 n.2 (8th Cir. 2004) (citing 68 Fed. Reg. 51153, 51155 (Aug. 26, 2003)); Stormo v. Barnhart, 377 F.3d 801, 806 (8th Cir. 2004) ("The burden of persuasion to prove disability and to demonstrate RFC remains on the claimant, even when the burden of production shifts to the Commissioner at step five."); Charles v. Barnhart, 375 F.3d 777, 782 n.5 (8th Cir. 2004) ("[T]he burden of production shifts to the Commissioner at step five to submit evidence of other work in the national economy that [the claimant] could perform, given her RFC.").

Even if a court finds that there is a preponderance of the evidence against the ALJ's decision, that decision must be affirmed if it is supported by substantial evidence. Clark v. Heckler, 733 F.2d 65, 68 (8th Cir. 1984). "Substantial evidence is less than a preponderance but is enough that a reasonable mind would find it adequate to support the Commissioner's conclusion." Krogmeier v.

<u>Barnhart</u>, 294 F.3d 1019, 1022 (8th Cir. 2002). <u>See also</u> <u>Cox v. Astrue</u>, 495 F.3d 614, 617 (8th Cir.

2007). In <u>Bland v. Bowen</u>, 861 F.2d 533, 535 (8th Cir. 1988), the Eighth Circuit Court of Appeals

held:

> [t]he concept of substantial evidence is something less than the weight of the evidence and it allows for the possibility of drawing two inconsistent conclusions, thus it embodies a zone of choice within which the Secretary may decide to grant or deny benefits without being subject to reversal on appeal.

<u>See also</u> <u>Lacroix v. Barnhart</u>, 465 F.3d 881, 885 (8th Cir. 2006) ("[W]e may not reverse merely

because substantial evidence exists for the opposite decision.") (quoting <u>Johnson v. Chater</u>, 87 F.3d

1015, 1017 (8th Cir. 1996)); <u>Hartfield v. Barnhart</u>, 384 F.3d 986, 988 (8th Cir. 2004) ("[R]eview of

the Commissioner's final decision is deferential.").

It is not the job of the district court to re-weigh the evidence or review the factual record de

novo. <u>Cox</u>, 495 F.3d at 617; <u>Guilliams v. Barnhart</u>, 393 F.3d 798, 801 (8th Cir. 2005); <u>McClees v.</u>

<u>Shalala</u>, 2 F.3d 301, 302 (8th Cir. 1993); <u>Murphy v. Sullivan</u>, 953 F.2d 383, 384 (8th Cir. 1992).

Instead, the district court must simply determine whether the quantity and quality of evidence is

enough so that a reasonable mind might find it adequate to support the ALJ's conclusion. <u>Davis v.</u>

<u>Apfel</u>, 239 F.3d 962, 966 (8th Cir. 2001) (citing <u>McKinney v. Apfel</u>, 228 F.3d 860, 863 (8th Cir.

2000)). Weighing the evidence is a function of the ALJ, who is the fact-finder. <u>Benskin v. Bowen</u>,

830 F.2d 878, 882 (8th Cir. 1987). <u>See also</u> <u>Onstead v. Sullivan</u>, 962 F.2d 803, 804 (8th Cir. 1992)

(holding that an ALJ's decision is conclusive upon a reviewing court if it is supported by "substantial

evidence"). Thus, an administrative decision which is supported by substantial evidence is not subject

to reversal merely because substantial evidence may also support an opposite conclusion or because

the reviewing court would have decided differently. <u>Krogmeier</u>, 294 F.3d at 1022. <u>See also</u>

<u>Eichelberger</u>, 390 F.3d at 589; <u>Nevland v. Apfel</u>, 204 F.3d 853, 857 (8th Cir. 2000) (quoting <u>Terrell</u>

v. Apfel, 147 F.3d 659, 661 (8th Cir. 1998)); Hutsell v. Massanari, 259 F.3d 707, 711 (8th Cir. 2001).

To determine whether the Commissioner's final decision is supported by substantial evidence, the Court is required to review the administrative record as a whole and to consider:

(1) Findings of credibility made by the ALJ;

(2) The education, background, work history, and age of the claimant;

(3) The medical evidence given by the claimant's treating physicians;

(4) The subjective complaints of pain and description of the claimant's physical activity and impairment;

(5) The corroboration by third parties of the claimant's physical impairment;

(6) The testimony of vocational experts based upon proper hypothetical questions which fairly set forth the claimant's physical impairment; and

(7) The testimony of consulting physicians.

Brand v. Sec'y of Dep't of Health, Educ. & Welfare, 623 F.2d 523, 527 (8th Cir. 1980); Cruse v. Bowen, 867 F.2d 1183, 1184-85 (8th Cir. 1989).

Additionally, an ALJ's decision must comply "with the relevant legal requirements." Ford v. Astrue, 518 F.3d 979, 981 (8th Cir. 2008).

The Social Security Act defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 416(i)(1)(A); 42 U.S.C. § 423(d)(1)(A).

"While the claimant has the burden of proving that the disability results from a medically determinable physical or mental impairment, direct medical evidence of the cause and effect relationship between the impairment and the degree of claimant's subjective complaints need not be

produced." Polaski v. Heckler, 739 F.2d 1320, 1322 (8th Cir. 1984). When evaluating evidence of pain, the ALJ must consider:

> (1) the claimant's daily activities;
>
> (2) the subjective evidence of the duration, frequency, and intensity of the claimant's pain;
>
> (3) any precipitating or aggravating factors;
>
> (4) the dosage, effectiveness, and side effects of any medication; and
>
> (5) the claimant's functional restrictions.

Baker v. Sec'y of Health & Human Servs., 955 F.2d. 552, 555 (8th Cir. 1992); Polaski, 739 F.2d at 1322. The absence of objective medical evidence is just one factor to be considered in evaluating the plaintiff's credibility. Id. The ALJ must also consider the plaintiff's prior work record, observations by third parties and treating and examining doctors, as well as the plaintiff's appearance and demeanor at the hearing. Polaski, 739 F.2d at 1322; Cruse, 867 F.2d at 1186.

The ALJ must make express credibility determinations and set forth the inconsistencies in the record which cause him to reject the plaintiff's complaints. Guilliams, 393 F.3d at 801; Masterson v. Barnhart, 363 F.3d 731, 738 (8th Cir. 2004); Lewis v. Barnhart, 353 F.3d 642, 647 (8th Cir. 2003); Hall v. Chater, 62 F.3d 220, 223 (8th Cir. 1995). It is not enough that the record contains inconsistencies; the ALJ must specifically demonstrate that he considered all of the evidence. Robinson, 956 F.2d at 841; Butler v. Sec'y of Health & Human Servs., 850 F.2d 425, 429 (8th Cir. 1988). The ALJ, however, "need not explicitly discuss each Polaski factor." Strongson v. Barnhart, 361 F.3d 1066, 1072 (8th Cir. 2004). See also Steed, 524 F.3d at 876 (citing Lowe v. Apfel, 226 F.3d 969, 972 (8th Cir. 2000)). The ALJ need only acknowledge and consider those factors. Id. Although credibility determinations are primarily for the ALJ and not the court, the ALJ's credibility

assessment must be based on substantial evidence. Rautio v. Bowen, 862 F.2d 176, 179 (8th Cir. 1988); Millbrook v. Heckler, 780 F.2d 1371, 1374 (8th Cir. 1985).

RFC is defined as what the claimant can do despite his or her limitations, 20 C.F.R. § 404.1545(a)(1), and includes an assessment of physical abilities and mental impairments. 20 C.F.R. § 404.1545(b)-(e). The Commissioner must show that a claimant who cannot perform his or her past relevant work can perform other work which exists in the national economy. Karlix v. Barnhart, 457 F.3d 742, 746 (8th Cir. 2006); Nevland, 204 F.3d at 857 (citing McCoy v. Schweiker, 683 F.2d 1138, 1146-47 (8th Cir. 1982) (en banc)). The Commissioner must first prove that the claimant retains the RFC to perform other kinds of work. Goff, 421 F.3d at 790; Nevland, 204 F.3d at 857. The Commissioner has to prove this by substantial evidence. Warner v. Heckler, 722 F.2d 428, 431 (8th Cir. 1983). Second, once the plaintiff's capabilities are established, the Commissioner has the burden of demonstrating that there are jobs available in the national economy that can realistically be performed by someone with the plaintiff's qualifications and capabilities. Goff, 421 F.3d at 790; Nevland, 204 F.3d at 857.

To satisfy the Commissioner's burden, the testimony of a vocational expert may be used. An ALJ posing a hypothetical to a vocational expert is not required to include all of a plaintiff's limitations, but only those which he finds credible. Goff, 421 F.3d at 794 ("[T]he ALJ properly included only those limitations supported by the record as a whole in the hypothetical."); Rautio, 862 F.2d at 180. Use of the Medical-Vocational Guidelines is appropriate if the ALJ discredits the plaintiff's subjective complaints of pain for legally sufficient reasons. Baker v. Barnhart, 457 F.3d 882, 894-95 (8th Cir. 2006); Carlock v. Sullivan, 902 F.2d 1341, 1343 (8th Cir. 1990); Hutsell v. Sullivan, 892 F.2d 747, 750 (8th Cir. 1989).

The issue before the court is whether substantial evidence supports the Commissioner's final determination that Plaintiff was not disabled. Onstead, 962 F.2d at 804. Thus, even if there is substantial evidence that would support a decision opposite to that of the Commissioner, the court must affirm his decision as long as there is substantial evidence in favor of the Commissioner's position. Cox, 495 F.3d at 617; Krogmeier, 294 F.3d at 1022.

Plaintiff testified at the hearing that she had a ninth-grade education; that she had not worked since April 2006; that she had difficulty breathing due to COPD; that she had depression, ankle pain, and panic attacks; that her ankle pain ranged from six to ten out of ten; that she had difficulty working with others; that she slept a lot when she was depressed; that her bipolar disorder affected her concentration; and that, in an eight-hour day she could lift ten pounds, stand thirty minutes, and walk one block. Tr. 28, 33-34, 44-48, 49-50.

The ALJ found that Plaintiff had not engaged in substantial gainful activity since her alleged onset date; that Plaintiff had the severe impairments of COPD, bipolar disorder, and surgical repair of a fractured ankle; that Plaintiff did not have an impairment or combination of impairments that met or equaled a listed impairment; that Plaintiff had the RFC to perform light work with certain restrictions; that Plaintiff's complaints regarding the intensity, persistence, and effects of her symptoms were not fully credible; that Plaintiff was not able to perform her past relevant work; that there were other jobs which existed in significant numbers which Plaintiff could perform; and that, therefore, Plaintiff was not disabled. Tr. 9-21.

Plaintiff argues that the ALJ's decision is not supported by substantial evidence because the ALJ erred in finding Plaintiff not fully credible; because the ALJ failed to properly address the medical evidence, including letters from Robert Patterson, D.O., and the opinion of Brian Edwards, D.O.;

because the ALJ's RFC did not include a "narrative discussion" of the medical evidence and did not account for Plaintiff's mental restrictions and restrictions related to her COPD; and because the ALJ did not submit a properly formulated hypothetical to the VE.[1]

## A.    Plaintiff's Credibility:

The court will first consider the ALJ's credibility determination, as the ALJ's evaluation of Plaintiff's credibility was essential to the ALJ's determination of other issues, including Plaintiff's RFC. See Wildman v. Astrue, 596 F.3d 959, 969 (8th Cir. 2010) ("[The plaintiff] fails to recognize that the ALJ's determination regarding her RFC was influenced by his determination that her allegations were not credible.") (citing Tellez v. Barnhart, 403 F.3d 953, 957 (8th Cir. 2005)); 20 C.F.R. §§ 404.1545, 416.945 (2010).  As set forth more fully above, the ALJ's credibility findings should be affirmed if they are supported by substantial evidence on the record as a whole; a court cannot substitute its judgment for that of the ALJ.  Guilliams, 393 F.3d at 801; Hutsell, 892 F.2d at 750; Benskin, 830 F.2d at 882. To the extent that the ALJ did not specifically cite Polaski, case law, and/or Regulations relevant to a consideration of Plaintiff's credibility, this is not necessarily a basis to set aside an ALJ's decision where the decision is supported by substantial evidence. Randolph v. Barnhart, 386 F.3d 835, 842 (8th Cir. 2004); Wheeler v. Apfel, 224 F.3d 891, 895 n.3 (8th Cir. 2000); Reynolds v. Chater, 82 F.3d 254, 258 (8th Cir. 1996); Montgomery v. Chater, 69 F.3d 273, 275 (8th Cir. 1995).  Additionally, an ALJ need not methodically discuss each Polaski factor if the factors are acknowledged and examined prior to making a credibility determination; where adequately explained and supported, credibility findings are for the ALJ to make. See Lowe v. Apfel, 226 F.3d

---

[1]    Plaintiff's Brief in Support of Complaint, which is five pages, does not cite or refer to any of the medical evidence of record.  In particular, Plaintiff does not suggest any aspect of her medical records which the ALJ failed to consider nor does she suggest any aspect of her medical records which supports her claim regarding the severity of her pain.

969, 972 (8th Cir. 2000). See also Tucker v. Barnhart, 363 F.3d 781, 783 (8th Cir. 2004) ("The ALJ

is not required to discuss each Polaski factor as long as the analytical framework is recognized and

considered."); Strongson, 361 F.3d at 1072; Brown v. Chater, 87 F.3d 963, 966 (8th Cir. 1996). In

any case, "[t]he credibility of a claimant's subjective testimony is primarily for the ALJ to decide, not

the courts." Pearsall v. Massanari, 274 F.3d 1211, 1218 (8th Cir. 2001). "If an ALJ explicitly

discredits the claimant's testimony and gives good reason for doing so, [a court] will normally defer

to the ALJ's credibility determination." Gregg v. Barnhart, 354 F.3d 710, 714 (8th Cir. 2003). See

also Halverson v. Astrue, 600 F.3d 922, 932 (8th Cir. 2010); Cox v. Barnhart, 471 F.3d 902, 907

(8th Cir. 2006). For the following reasons, the court finds that the reasons offered by the ALJ in

support of his credibility determination are based on substantial evidence.

First, the ALJ considered that Plaintiff's bipolar disorder was controlled by medication. Tr.

17-19. In particular, on May 27, 2005, when Plaintiff was seen for follow-up regarding her

medications, Plaintiff told Dr. Patterson that she was feeling better due to her antidepressants and that

her symptoms were controlled. Tr. 212. On July 13, 2005, when she was seen for follow-up

regarding her medication, Plaintiff reported to Dr. Patterson that she was "feeling good" that day and

was doing "excellent" in regard to her depression. Tr. 209. On August 23, 2005, Plaintiff reported

that she was "not really anymore depressed, but [was] just getting extremely nervous." Tr. 208. On

November 11, 2005, Dr. Patterson reported that Plaintiff was doing "excellent" in regard to her

depression and that Plaintiff denied any complaints or problems. Tr. 205. As considered by the ALJ,

Dr. Patterson reported, on April 19, 2006, that Plaintiff had been "excellent for an extended period

of time on her meds, but she said all of a sudden her depression [had] been getting the best of her."

Dr. Patterson further reported on this date that, after he discussed the situation with Plaintiff, he felt

that Plaintiff had "a hold on things." Tr. 17, 189. On May 9, 2006, Dr. Patterson reported that

Plaintiff was doing better since her Pexeva was increased. Tr. 188. In June 2006, it was reported that Plaintiff's COPD symptoms improved with IV solu-Medrol, nebulizers and oxygen; that she responded to treatment quickly; and that Plaintiff felt much improvement, "particularly with the nebulizer treatments." Tr. 224. On August 14, 2006, Dr. Patterson reported that Plaintiff was doing well on her medication. Tr. 403. On September 12, 2006, Plaintiff told Dr. Patterson that her medications helped her. Tr. 397. On August 28, 2007, Carl Blatt, Jr., M.D., reported that Plaintiff was suffering from "transient constipation" and that Plaintiff had "shown significant improvement by being placed on FiberCon." Tr. 424-25. On September 21, 2007, Dr. Patterson reported that Plaintiff "felt much improved" after they "spent a good 30 minutes talking about various issues and it really made a difference." Tr. 364. On October 9, 2007, Dr. Patterson noted that Plaintiff's depression was "much more controlled." Tr. 359. Dr. Edwards reported, on December 26, 2007, that Plaintiff's bipolar disorder was stable. Tr. 492. Conditions which can be controlled by treatment are not disabling. See Davidson v. Astrue, 578 F.3d 838, 846 (8th Cir. 2009); Medhaug v. Astrue, 578 F.3d 805, 813 (8th Cir. 2009); Schultz v. Astrue, 479 F.3d 979, 983 (8th Cir. 2007) (holding that if an impairment can be controlled by treatment, it cannot be considered disabling); Estes v. Barnhart, 275 F.3d 722, 725 (8th Cir. 2002); Murphy, 953 F.2d 383, 384 (8th Cir. 1992); Warford v. Bowen, 875 F.2d 671, 673 (8th Cir. 1989) (holding that a medical condition that can be controlled by treatment is not disabling); James for James v. Bowen, 870 F.2d 448, 450 (8th Cir. 1989). The court finds, therefore, that the ALJ properly considered the extent to which Plaintiff's conditions were controlled by medication and treatment and that substantial evidence supports the ALJ's decision in this regard.

Second, the ALJ considered the objective medical evidence. Tr. 18. In this regard, Edward J. O'Brien, M.D., reported on February 12, 2006, that a "Chest PA/LAT" showed infiltration in the right middle lobe, no consolidation or pleural fluid, and normal cardiac and mediastinal contours. Dr.

O'Brien also reported that Plaintiff had COPD with scattered fibrosis and that there was no "essential change from 12/4/01." Tr. 244. A February 14, 2006 chest imaging report states that no focal infiltrate or consolidation was seen; that there was no pleural effusion or pneumothorax; that the heart size was unremarkable; and that the impression was *no acute pulmonary* process. Tr. 295. A June 13, 2006 Computed Tomography Finalized Consultation Report for a CT of the thorax states that Plaintiff may have had a *small thyroid nodule*. In regard to the abdomen, this report states that Plaintiff had "*mild fatty infiltration* of the liver"; that the spleen was not enlarged: and that otherwise the exam was unremarkable. In regard to the pelvis, this report states that Plaintiff may have had a cyst on the right ovary. Tr. 177-80. A June 19, 2006 CT scan showed Plaintiff had COPD; that Plaintiff did not have pleural effusions; that her heart size was normal; and that Plaintiff's condition had "slightly progressed" since the February 2006 scan. Tr. 231. An August 31, 2006 pathology report states that Plaintiff had "[m]ildly hypercellular bone marrow," "[d]iffuse, mild reticulin fibrosis," and "[m]ildly increased stainable iron stores." Tr. 408-10. Additionally, the results of a September 14, 2006 bladder ultrasound were unremarkable. Tr. 436.

Plaintiff had a series of chest x-rays from March 16, 2007, through March 22, 2007, while she was hospitalized for hernia repair. A March 16, 2007 chest x-ray showed *"no acute pulmonary process."* Tr. 347. A March 19, 2007 chest x-ray report states that Plaintiff had "hazy basilar infiltrates and pleural effusions" and that there was "*[s]ome improvement* in one day with less pulmonary vascular congestion in the mid-lungs." Tr. 344. An x-ray performed the next day, March 20, 2007, showed "*some improvement*." Tr. 343. A chest x-ray report, dated March 22, 2007, states that there was "*decreased congestion* and perihilar and peripheral infiltration." Tr. 342. An Imaging Services Report, dated August 24, 2007, states that Plaintiff did not have pleural effusion; that her liver, spleen, pancreas, adrenal glands, and kidneys were all unremarkable; that Plaintiff did have

diffuse hypodensity in the liver, consistent with fatty infiltration; that Plaintiff did not have bowel obstruction, free air, fluid collection, focal acute inflammatory process, mass, or adenopathy in the abdomen or pelvis; that there were post-op changes in the abdomen; and that, other than what was noted, the CT of Plaintiff's abdomen was negative. Tr. 427-34. The report from a September 4, 2007 chest x-ray states that the exam was a follow-up to an abdominal CT which showed a nodule; that the density appeared smaller; that it was not completely resolved; and that an exam should be conducted every three to six months. Tr. 426. A report, dated January 16, 2008, states that Plaintiff had a CT of the head because she had "[h]eadache following [a] fall" and that Plaintiff did not have acute intracranial abnormalities. Tr. 512. See Polaski, 739 F.2d at 1322 ("The absence of an objective medical basis which supports the degree of severity of subjective complaints alleged is [] one factor to be considered in evaluating the credibility of the testimony and complaints."). As such, the court finds that the ALJ's consideration of the objective medical evidence upon addressing Plaintiff's credibility is based on substantial evidence and that it is consistent with the Regulations and case law.

Third, the ALJ considered that Plaintiff was hospitalized only once for her COPD, from June 19, 2006, through June 21, 2006. Tr. 18. Plaintiff also testified that she took ibuprofen for her ankle pain. Indeed, after August 2008 Plaintiff did not undergo treatment for her ankle or ankle pain. Tr. 36-37, 44. Also, as stated above, Plaintiff took FiberCon for constipation. Tr. 424-25. Where a plaintiff has not been prescribed any potent pain medication, an ALJ may properly discount the plaintiff's complaints of disabling pain. Clark v. Shalala, 28 F.3d 828, 831 n.4 (8th Cir. 1994); Benskin, 830 F.2d at 884 (holding that treatment by hot showers and taking dosages of Advil and aspirin do not indicate disabling pain); Cruse v. Bowen, 867 F.2d 1183, 1187 (8th Cir. 1989) (holding that minimal consumption of pain medication reveals a lack of disabling pain); Rautio v. Bowen, 862 F.2d 176, 179 (8th Cir. 1988) (failure to seek aggressive treatment and limited use of prescription

medications is not suggestive of disabling pain). Moreover, seeking limited medical treatment is inconsistent with claims of disabling pain. Edwards v. Barnhart, 314 F.3d 964, 967 (8th Cir. 2003) ("[T]he ALJ concluded, and we agree, that if her pain was as severe as she alleges, [Plaintiff] would have sought regular medical treatment."); Gwathney v. Chater, 104 F.3d 1043, 1045 (8th Cir. 1997) ("[Claimant's] failure to seek medical assistance for her alleged physical and mental impairments contradicts her subjective complaints of disabling conditions and supports the ALJ's decision to deny benefits."); Nelson v. Sullivan, 946 F.2d 1314, 1317 (8th Cir. 1991); James, 870 F.2d at 450. The court finds that the ALJ's decision in this regard is supported by substantial evidence and that it is consistent with the Regulations and case law.

Fourth, the ALJ considered Plaintiff's daily activities. Tr. 16-17. Plaintiff reported that she talked on the telephone, watched television, prepared dinner, did laundry, washed dishes, sewed, shopped, went to church, and could count change, pay bills, manage her savings account, and use a check book. Tr. 145-47. Plaintiff also cared for her grandchildren. Tr. 280-81, 390, 403. Additionally, Dr. Patterson reported, on April 4, 2006, that, when Plaintiff complained of back pain, she said she had moved households and had done a lot of extra work. Tr. 191. While the undersigned appreciates that a claimant need not be bedridden before he can be determined to be disabled, Plaintiff's daily activities can nonetheless be seen as inconsistent with her subjective complaints of a disabling impairment and may be considered in judging the credibility of her complaints. Eichelberger, 390 F.3d at 590 (holding that the ALJ properly considered that the plaintiff watched television, read, drove, and attended church upon concluding that subjective complaints of pain were not credible); Dunahoo v. Apfel, 241 F.3d 1033, 1038 (8th Cir. 2001); Onstead, 962 F.2d at 805; Murphy v. Sullivan, 953 F.2d 383, 386 (8th Cir. 1992); Benskin, 830 F.2d at 883; Bolton v. Bowen, 814 F.2d 536, 538 (8th Cir. 1987). Indeed, the Eighth Circuit holds that allegations of disabling "pain may be

discredited by evidence of daily activities inconsistent with such allegations." Davis v. Apfel, 239 F.3d 962, 967 (8th Cir. 2001) (citing Benskin, 830 F.2d at 883). "Inconsistencies between [a claimant's] subjective complaints and [his] activities diminish her credibility." Goff, 421 F.3d at 792 (citing Riggins v. Apfel, 177 F.3d 689, 692 (8th Cir. 1999)). See also Mouser v. Astrue, 545 F.3d 634, 638 (8th Cir. 2008) ("Although the ALJ may have overstated [the claimant's] daily activities, the record indicates that [the claimant] is generally able to care for himself."); Haley v. Massanari, 258 F.3d 742, 748 (8th Cir. 2001); Nguyen v. Chater, 75 F.3d 429, 439-41 (8th Cir. 1996) (holding that a claimant's daily activities, including visiting neighbors, cooking, doing laundry, and attending church, were incompatible with disabling pain and affirming denial of benefits at the second step of analysis). The court finds, therefore, that the ALJ properly considered Plaintiff's daily activities upon choosing to discredit her complaints of debilitating pain. The court further finds that substantial evidence supports the ALJ's decision in this regard.

Fifth, as considered by the ALJ, Plaintiff had a history of non-compliance. Tr. 18-19. In this regard, as considered by the ALJ, Plaintiff's physicians advised her to stop smoking, but she continued to smoke. Tr. 17-18, 38. In particular, Dr. Patterson reported, on May 27, 2005, that he told Plaintiff that if she did not stop smoking it would "greatly shorten her life." Tr. 212. Dale J. Brewer, D.O., reported, on February 3, 2006, when Plaintiff complained of a cough and chest congestion, that Plaintiff continued to smoke against medical advice. Tr. 201. On February 5, 2007, Plaintiff told Dr. Patterson that she had run out of her medication and went into "her manic phase for awhile because she ran out of her medications." Dr. Patterson told Plaintiff that "this [was] very dangerous" and Plaintiff responded that she knew that. Tr. 378. When Plaintiff was seen for follow up regarding her lungs, on February 16, 2006, Dr. Brewer noted that Plaintiff continued to smoke. On March 3, 2006, Dr. Brewer reported that Plaintiff received electrical shock therapy for smoking

cessation; that Plaintiff stated that she was doing a "lot better and [was] not coughing as much"; and that Plaintiff was not short of breath. Tr. 195. On February 15, 2007, Dr. Patterson warned Plaintiff about the damage that smoking was causing. Tr. 377. On March 18, 2007, Darrell Pitt, D.O., reported, among other things, that Plaintiff had COPD with tobacco dependency. Tr. 327-28. On May 31, 2007, Dr. Patterson reported that he had "a long talk about smoking" with Plaintiff; that he told her smoking was "the biggest problem she [had]"; that Plaintiff said she was down to about seven cigarettes a day; that Dr. Patterson told her that until she got "to zero it [was] not going to really help with her symptomology." Tr. 374. On July 12, 2007, when Plaintiff presented with cough and congestion, Dr. Patterson reported that he told Plaintiff that "if she [did not] quit smoking that this [was] definitely going to cause severe consequences." Tr. 369. On October 9, 2007, when Plaintiff was seen for cough, congestion, headache, and somatic dysfunction, it was reported that the doctor had "been telling her for an extended period of time that, if she [did not] quit smoking she [was] going to suffer severe consequences." Tr. 359. On April 29, 2008, it was reported that Plaintiff was smoking a half pack of cigarettes a day. Tr. 463. Also, Plaintiff reported, on May 29, 2008, that she had taken herself off all her medications on April 1, 2008, and that she had "been doing well with no mania with her bipolar and she also took herself off her thyroid medication." Tr. 463. Dr. Edwards reported, on April 18, 2008, that Plaintiff had been forgetting to take her medications and that she took them "whenever." Tr. 485. A claimant's failure to comply with prescribed medical treatment and lack of significant medical restrictions is inconsistent with complaints of disabling pain. Eichelberger, 390 F.3d at 589 (citing Brown v. Chater, 87 F.3d 963, 965 (8th Cir. 1996)); Wheeler, 224 F.3d at 895(citing Kisling, 105 F.3d at 1257) (holding that impairments which are controllable or amenable to treatment including certain respiratory problems, do not support a finding of disability, and failure to follow a prescribed course of remedial treatment, including cessation of smoking,

without good reason is grounds for denying an application for benefits). As such, the court finds that the ALJ properly considered Plaintiff's non-compliance and that the ALJ's decision, in this regard, is supported by substantial evidence.

Sixth, as considered by the ALJ, Plaintiff testified that she had a driver's license and did not drive. The record does not reflect that any physician imposed restrictions on her in this regard. Tr. 17, 39. A record, such as that in the matter under consideration, which does not reflect physician-imposed restrictions suggests that a claimant's restrictions in daily activities are self-imposed rather than by medical necessity. See Zeiler, 384 F.3d at 936 ("[T]here is no medical evidence supporting [the claimant's] claim that she needs to lie down during the day."); Fredrickson v. Barnhart, 359 F.3d 972, 977 n.2 (8th Cir. 2004) ("There is no evidence in the record that [the claimant] complained of severe pain to his physicians or that they prescribed that he elevate his foot or lie down daily."). The court finds that the ALJ's decision in this regard is supported by substantial evidence and that it is consistent with the Regulations and case law.

Seventh, the ALJ considered that, in November 2006, Dr. Patterson reported that Plaintiff's depression was being controlled "but that she had added stress related to family matters." Tr. 18. Additionally, when Plaintiff told Dr. Patterson, on August 23, 2005, that she was "getting extremely nervous," she said she was dealing with family issues. Dr. Patterson increased Plaintiff's Xanax on this date and said that "when things settle[d] down," Plaintiff could go back to "BID dosing." Tr. 208. Also, on May 9, 2006, when Dr. Patterson noted that Plaintiff was doing better, he also noted that Plaintiff had "so many things going on in her life that it [was] hard to see straight." Tr. 188. On June 6, 2006, although he reported that a "lot of Plaintiff's problems [were] more [] chemical in nature," Dr. Patterson also reported that he discussed with Plaintiff "various issues in her life"; that a "lot of things finally caught up with [Plaintiff]"; and that Plaintiff had been "stressed out purchasing

a new home and dealing with some problems with her children." Tr. 185. Situational depression is not disabling. See Dunahoo, 241 F.3d at 1039-40 (holding that depression was situational and not disabling because it was due to denial of food stamps and workers compensation and because there was no evidence that it resulted in significant functional limitations). In conclusion, the court finds that the ALJ's credibility determination is based on substantial evidence and that it is consistent with the Regulations and case law.

**B.    Dr. Patterson's Letters:**

Plaintiff contends that the ALJ did not properly consider letters written by Dr. Patterson. Dr. Patterson wrote letters, dated November 16, 2007, November 26, 2008, February 16, 2009, and March 20, 2009. Tr. 535-38. In the November 2007 letter, Dr. Patterson opined that Plaintiff's medical and mental conditions made the possibility of her holding gainful employment non-existent. Tr. 535. The November 2008 letter states that Plaintiff was "not employable" and that her physical and emotional conditions made "it difficult for her to obtain gainful employment." Tr. 536. The February 2009 letter states that Plaintiff was "totally unable to hold any type of gainful employment." Tr. 537. The May 2009 letter states that Dr. Patterson did not think Plaintiff was employable. Tr. 538.

First, only the 2007 letter predated the ALJ's opinion. Thus, the ALJ could not have considered the other letters. Second, despite the fact that Dr. Patterson's November 2007 letter was not introduced into evidence at the hearing and, thus, was not submitted to the ALJ, Plaintiff's attorney acknowledged at the hearing that the record was complete. Tr. 26.

Third, the ALJ's decision reflects that he did consider Dr. Patterson's records and that he concluded that these records did not reflect that Plaintiff's conditions were likely to cause symptoms with the presence of an uncontrolled, disabling impairment. Tr. 18. The ALJ considered that Dr.

Patterson frequently reported that Plaintiff's symptoms were under control and that medication helped; that when he gave Plaintiff a work excuse in May 2006, he said she needed more time to take care of a "very pressing family issue"; that, in June 2006, Plaintiff told Dr. Patterson that she felt better when she was working and that she enjoyed working; and that Dr. Patterson reported that he felt Plaintiff would be helped by returning to work. Tr. 17-18. Thus, to the extent Dr. Patterson stated in any of his letters that Plaintiff was unable to work, such statements were inconsistent with Dr. Patterson's own records. "A treating physician's opinion is given controlling weight if it 'is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [a claimant's] case record.'" Tilley v. Astrue, 580 F.3d 675, 679 (8th Cir. 2009) (quoting 20 C.F.R. § 404.1527(d)(2) (2000)). See also Heino v. Astrue, 578 F.3d 873, 880 (8th Cir. 2009); Prosch v. Apfel, 201 F.3d 1010, 1012-13 (8th Cir. 2000). A treating physician's opinion, however, is not given controlling weight where it is inconsistent with the physician's own records. See 20 C.F.R. § 404.1527(d)(3) (providing that more weight will be given to an opinion when a medical source presents relevant evidence, such as medical signs, in support of his or her opinion); Davidson v. Astrue, 578 F.3d 838, 842 (8th Cir.2009) ("It is permissible for an ALJ to discount an opinion of a treating physician that is inconsistent with the physician's clinical treatment notes."); Leckenby v. Astrue, 487 F.3d 626, 632 (8th Cir. 2007) (holding that a treating physician's opinion does not automatically control or obviate need to evaluate the record as whole and upholding the ALJ's decision to discount the treating physician's medical-source statement where limitations were never mentioned in numerous treatment records or supported by any explanation); Hacker v. Barnhart, 459 F.3d 934, 937 (8th Cir. 2006) (holding that where a treating physician's notes are inconsistent with his or her RFC assessment, controlling weight is not given to the RFC assessment); Reed v. Barnhart, 399 F.3d 917, 920 (8th Cir. 2005) (holding

that a treating physician's opinion is given controlling weight "if it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence").

Fourth, Plaintiff submitted Dr. Patterson's letters to the Appeals Council.[2]  The Appeals Council considered the record as well as additional evidence submitted by Plaintiff and concluded that the additional evidence did not provide a basis for changing the ALJ's decision. Tr. 1-5.  Fifth, Plaintiff's insured status expired December 31, 2008.  Thus, to the extent Dr. Patterson's February and March 2009 letters address Plaintiff's condition after that date, they are not relevant. Tr. 14,173, 537-38.  Sixth, when the Appeals Council denies review, finding the new evidence was not material or did not detract from the ALJ's conclusion, a court does not evaluate the Appeal's Council decision to deny review; rather, the court considers whether substantial evidence on the record as a whole, including the new evidence, supports the ALJ's decision. Van Vicle v. Astrue, 539 F.3d 825, 828 (8th Cir. 2008).

Seventh, Dr. Patterson's letters of November 2007 and 2008 address Plaintiff's condition through October 10, 2008. Tr. 535-36.  The record does not reflect, however, that Dr. Patterson actually treated Plaintiff after October 17, 2007.  Eighth, as discussed above in regard to Plaintiff's credibility, objective medical records do not reflect that Plaintiff's conditions were disabling. See

---

[2]      The Appeals Council will consider new and material evidence where it relates to the period on or before the date of the ALJ hearing decision. 20 C.F.R. § 404.970(b).  New and material evidence submitted to the Appeals Council which relates to the period before the date of the ALJ's decision becomes part of the administrative record. Davidson v. Astrue, 501 F.3d 987, 990 (8th Cir. 2007); Cunningham v. Apfel, 222 F.3d 496, 500 (8th Cir. 2000).  To be material, the evidence must be "non-cumulative, relevant, and probative of the claimant's condition for the time period for which benefits were denied" and must not concern "subsequent deterioration of a previously non-disabling  condition." Jones v. Callahan, 122 F.3d 1148, 1154 (8th Cir. 1997). See also Rehder v. Apfel, 205 F.3d 1056, 1061 (8th Cir. 2000).

Chamberlain v. Shalala, 47 F.3d 1489, 1494 (8th Cir. 1995) (citing Matthews v. Bowen, 879 F.2d 422, 424 (8th Cir. 1989) (holding that opinions of treating doctors are not conclusive in determining disability status and must be supported by medically acceptable clinical or diagnostic data); 20 C.F.R. § 404.1527(d)(3) (providing that more weight will be given to an opinion when a medical source presents relevant evidence, such as medical signs, in support of his or her opinion).

Ninth, Dr. Patterson's November 2007 and November 2008 letters purport to rely on the same treatment records which the ALJ considered. Thus, these letters do not create a reasonable likelihood, were the court to remand this matter, that such remand would result in an award of benefits. See Rehder, 205 F.3d at 1061. Tenth, to the extent Dr. Patterson opined that Plaintiff could not work and was unemployable, a treating physician's opinion that a claimant is not able to return to work "involves an issue reserved for the Commissioner and therefore is not the type of 'medical opinion' to which the Commissioner gives controlling weight." Ellis v. Barnhart, 392 F.3d 988, 994 (8th Cir. 2005). The court finds, therefore, that the ALJ gave proper weight to Dr. Patterson's letters and that the ALJ's decision, in this regard, is supported by substantial evidence on the record as a whole.

C.     **The Opinion of Dr. Edwards:**

Dr. Edwards stated in a letter, dated January 4, 2008, that he had been seeing Plaintiff for the past several months; that Plaintiff's "main condition actually center[ed] around her bipolar disorder which [had] a very strong level of anxiety component to it"; that although Plaintiff's bipolar disorder was "relatively well controlled," she had breakthrough symptoms; that Plaintiff's depressive

symptoms affected her ability to hold a job; that her COPD limited her ability to perform strenuous activity; and that he was concerned that Plaintiff's conditions "may affect her ability to hold down a job." Tr. 413. Plaintiff contends that the ALJ did not give proper weight to Dr. Edwards opinion, as stated in this letter.

First, to the extent Dr. Edwards opined that Plaintiff was unable to work, as stated above, such a finding is for the ALJ to make. See Ellis, 392 F.3d at 994. Second, the ALJ did take into consideration the limitations which Dr. Edwards imposed on Plaintiff regarding her inability to engage in strenuous activity due to her COPD and her ability to hold a job due to depressive symptoms. In this regard, the ALJ found that Plaintiff could engage in light work with less than moderate exposure to fumes, odors, dusts, and gases; understanding, remembering, and carrying out simple instructions and non-detailed tasks; and no constant, regular contact with the general public. Tr. 15-16. See Choate v. Barnhart, 457 F.3d 865, 869-70 (8th Cir. 2006) (holding that the limitations imposed by the ALJ as reflected in the claimant's RFC demonstrating that the ALJ gave some credit to the opinions of the treating physicians"); Ellis, 392 F.3d at 994 ("In assessing [the claimant's] RFC, the ALJ determined that [the claimant] could sit for a total of six hours and stand for a total of two hours, but was limited to sedentary work. This in itself is a significant limitation, which reveals that the ALJ did give some credit to [the treating doctor's] medical opinions.").

Third, the ALJ did consider Dr. Edwards's treatment records. As discussed above, the opinion of a treating doctor is not controlling where his treatment notes are inconsistent with his conclusions regarding the severity of a claimant's symptoms. See 20 C.F.R. § 404.1527(d)(3); Hacker, 459 F.3d at 937. In this regard, the ALJ considered that on December 26, 2007, Dr. Edwards reported that Plaintiff's bipolar disorder was "actually pretty stable." Dr. Edwards also reported on this date that Plaintiff was alert and in not acute distress; that her ENT was intact without

infection; that her lungs had course sounds with wheezing; that her extremities were warm without clubbing; that she had tenderness in the left elbow and mid-thoracic region along the rib heads; and that Plaintiff's diagnosis included left elbow tendinitis, thoracic pain, bipolar disorder, and "COPD exacerbation." Tr. 18, 492. Dr. Edwards saw Plaintiff on April 18, 2008, after she had a recent fall. Dr. Edwards reported on this date that Plaintiff was awake, alert, and in no acute distress; that her heart and lungs were clear; that her extremities were warm without clubbing, cyanosis, or edema; and that she had bruising on her elbows and decreased ROM of the left shoulder. Tr. 485. The ALJ also considered that, on August 11, 2008, Dr. Edwards reported that Plaintiff said she was forgetting things and not sleeping well. Tr. 482. When Plaintiff presented to Dr. Edwards nine days later, on August 20, 2008, she did so complaining of cough and phlegm. On this date Dr. Edwards noted that Plaintiff was awake, alert, and in no acute distress and he did not otherwise address Plaintiff's mental state. Tr. 480. As such, the court finds that the ALJ gave proper weight to Dr. Edwards's opinion and that the ALJ's decision, in this regard, is supported by substantial evidence.

## D.     Plaintiff's RFC:

The Regulations define RFC as "what [the claimant] can do" despite his or her "physical or mental limitations." 20 C.F.R. § 404.1545(a). "When determining whether a claimant can engage in substantial employment, an ALJ must consider the combination of the claimant's mental and physical impairments." Lauer v. Apfel, 245 F.3d 700, 703 (8th Cir. 2001). "The ALJ must assess a claimant's RFC based on all relevant, credible evidence in the record, 'including the medical records, observations of treating physicians and others, and an individual's own description of his limitations.'" Tucker v. Barnhart, 363 F.3d 781, 783 (8th Cir. 2004) (quoting McKinney v. Apfel, 228 F.3d 860, 863 (8th Cir. 2000)).

The ALJ in the matter under consideration found that Plaintiff has the RFC for light work and that, as such, she can lift no more than twenty pounds occasionally and ten pounds frequently; that she can occasionally stoop, bend, crouch, or climb stairs and ramps; that she can never crawl or climb ladders, ropes or scaffolds. 20 C.F.R. § 404.1567(b). He further found that she should avoid moderate exposure to fumes, odors, dusts, and gases; that she can understand, remember, and carry out at least simple instructions and non-detailed tasks; and that she can not work in a setting which included constant, regular contact with the general public. Tr. 15-16. Plaintiff contends that this RFC finding is not supported by substantial evidence because it is not supported by the medical records; because it does not account for her inability to work with others, concentrate, handle stress, and remember facts; and because it does not account for her COPD.

First, upon making an RFC assessment, an ALJ must first identify a claimant's functional limitations or restrictions, and then assess his or her work-related abilities on a function-by-function basis. See Masterson, 363 F.3d at 737; Harris v. Barnhart, 356 F.3d 926, 929 (8th Cir. 2004). The RFC need only include a plaintiff's credible limitations. See Tindell v. Barnhart, 444 F.3d 1002, 1007 (8th Cir. 2006) ("The ALJ included all of Tindell's credible limitations in his RFC assessment, and the ALJ's conclusions are supported by substantial evidence in the record."). Pursuant to this requirement, the ALJ found that Plaintiff's subjective complaints were not fully credible. The court has found, above, that the ALJ's credibility determination is based on substantial evidence.

Second, despite Plaintiff's contention to the contrary, the ALJ did take into consideration Plaintiff's credible limitations, including those related to her COPD and mental disorders. In this regard he restricted Plaintiff's ability to stoop, bend, crouch, and climb, her exposure to fumes, odors, dusts, and gases, her being limited to simple instructions and non-detailed tasks, and her not working in a setting with constant contact with the public.

Third, while a claimant's RFC is primarily the responsibility of the ALJ, a "'claimant's residual functional capacity is a medical question.'" Lauer, 245 F.3d at 704 (quoting Singh v. Apfel, 222 F.3d 448, 451 (8th Cir. 2000)). The Eighth Circuit clarified in Lauer, 245 F.3d at 704, that "'[s]ome medical evidence,' Dykes v. Apfel, 223 F.3d 865, 867 (8th Cir. 2000) (per curiam), must support the determination of the claimant's RFC, and the ALJ should obtain medical evidence that addresses the claimant's 'ability to function in the workplace,' Nevland v. Apfel, 204 F.3d 853, 858 (8th Cir. 2000)." Thus, an ALJ is "required to consider at least some supporting evidence from a professional." Id. Upon determining Plaintiff's RFC the ALJ considered the medical evidence, as discussed above in regard to Plaintiff's credibility and the opinions of her doctors.

Fourth, the ALJ's determination of Plaintiff's RFC is precise as it directly addresses her restrictions and the requirements of light work. The ALJ specifically incorporated further limitations on Plaintiff's RFC based on the medical evidence. See McKinney, 228 F.3d at 863 ("The Commissioner must determine a claimant's RFC based on all of the relevant evidence, including the medical records, observations of treating physicians and others, and an individual's own description of his limitations.") (citing Anderson v. Shalala, 51 F.3d 777, 779 (8th Cir. 1995).

Fifth, to the extent that Plaintiff contends that the ALJ's RFC determination is not supported by substantial evidence, as discussed above, it was reported that her mental disorders were well controlled with medication. To the extent the ALJ found she could have some contact with the public or others, as discussed above, Plaintiff shopped and attended church and took care of her grandchildren, indicating she could get along with others. In regard to Plaintiff's COPD, as discussed above in regard to her noncompliance, when Plaintiff was hypnotized for smoking cessation, she smoked less and felt better. Further, in regard to her COPD, Plaintiff was hospitalized only once for

this condition. In any case, as discussed above, the ALJ accounted for Plaintiff's COPD by imposing limitations, including her exposure to irritants.

Sixth, in regard to Plaintiff's allegation that the ALJ improperly assessed the severity of her mental conditions because he found she did not have any episodes of decompensation, Plaintiff's medical records do not reflect that she had such an episode. Indeed, Plaintiff testified that she "lost it right there in the store." Tr. 46. The ALJ, however, found Plaintiff not fully credible and that her symptoms were exaggerated. As discussed above, the court has found that the ALJ's credibility determination is based on substantial evidence.

Seventh, to the extent Plaintiff suggests that the ALJ did not address her medical records in sufficient detail, an ALJ's failure to cite specific evidence does not indicate that such evidence was not considered. See Moore ex rel. Moore v. Barnhart, 413 F.3d 718, 721 n.3 (8th Cir. 2005) ("The fact that the ALJ's decision does not specifically mention the [particular listing] does not affect our review."); Montgomery v. Chater, 69 F.3d 273, 275 (8th Cir. 1995). In conclusion, the court finds that the ALJ's RFC determination is consistent with the medical evidence; that the ALJ took into consideration all of Plaintiff's credible limitations; that the ALJ's RFC determination is based on substantial evidence on the record as a whole; and that it is consistent with the Regulations and case law.

The ALJ submitted a hypothetical to a VE which included all of Plaintiff's limitations which the ALJ found credible. An ALJ posing a hypothetical to a VE is not required to include all of a claimant's limitations, but only those which he finds credible. Martise v. Astrue, 641 F.3d 909, 927 (8th Cir. 2011) ("The ALJ's hypothetical question to the vocational expert needs to include only those impairments that the ALJ finds are substantially supported by the record as a whole.") (quoting Lacroix v. Barnhart, 465 F.3d 881, 889 (8th Cir. 2006)); Guilliams, 393 F.3d at 804 (holding that a

proper hypothetical sets forth impairments supported by substantial evidence and accepted as true by the ALJ); Gilbert v. Apfel, 175 F.3d 602, 604 (8th Cir. 1999) ("In posing hypothetical questions to a vocational expert, an ALJ must include all impairments he finds supported by the administrative record.").

The VE testified that there was work available in the local and national economy, in significant numbers, which a person of Plaintiff's age, education, work history, and RFC could perform. Tr. 54-57. Where a hypothetical question precisely sets forth all of the claimant's physical and mental impairments, a VE's testimony constitutes substantial evidence supporting the ALJ's decision. Martise, 641 F.3d at 927 ("Based on our previous conclusion ... that 'the ALJ's findings of [the claimant's] RFC are supported by substantial evidence,' we hold that '[t]he hypothetical question was therefore proper, and the VE's answer constituted substantial evidence supporting the Commissioner's denial of benefits.'") (quoting Lacroix, 465 F.3d at 889); Robson v. Astrue, 526 F.3d 389, 392 (8th Cir. 2008) (holding that a VE's testimony is substantial evidence when it is based on an accurately phrased hypothetical capturing the concrete consequences of a claimant's limitations); Wingert v. Bowen, 894 F.2d 296, 298 (8th Cir. 1990). Thus, the court finds that the ALJ's determinations that there is work available in substantial numbers which Plaintiff can perform is supported by substantial evidence. As such, the court finds that the ALJ's conclusion that Plaintiff is not disabled is supported by substantial evidence.

## IV.
## CONCLUSION

For the reasons set forth above, the court finds that substantial evidence on the record as a whole supports Commissioner's decision that Plaintiff is not disabled.

Accordingly,

**IT IS HEREBY ORDERED** that the relief sought by Plaintiff in her Complaint and Brief in Support of Complaint is **DENIED**; Docs. 1, 14,

**IT IS FURTHER ORDERED** that a separate judgment be entered incorporating this Memorandum Opinion.

/s/Mary Ann L. Medler
MARY ANN L. MEDLER
UNITED STATES MAGISTRATE JUDGE

Dated this <u>3rd</u> day of February, 2012.